HABERBUSH, LLP
DAVID R. HABERBUSH, ESQ., SBN 107190
VANESSA M. HABERBUSH, ESQ., SBN 287044
LANE K. BOGARD, ESQ., SBN 306972
444 West Ocean Boulevard, Suite 1400
Long Beach, CA 90802
Telephone: (562) 435-3456
Facsimile: (562) 435-6335
E-mail: vhaberbush@lbinsolvency.com

Proposed Attorneys for Debtor and Debtor-in-Possession

HABERBUSH, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION**

| | |
|---|---|
| In re<br><br>SCREENING SERVICES GROUP, LLC,<br><br>Debtor and Debtor-in-Possession. | Case No. 2:26-bk-19276-BR<br><br>**Chapter 11**<br><br>**EMERGENCY MOTION OF DEBTOR AND DEBTOR-IN-POSSESSION FOR ORDER AUTHORIZING INTERIM USE OF CASH COLLATERAL; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF MICHAEL HALL IN SUPPORT OF EMERGENCY MOTION AND IN SUPPORT OF HEARING MOTION ON EMERGENCY BASIS**<br><br>**Hearing Date**<br>Date: To be set<br>Time: To be set<br>Ctrm: 1668<br>255 E. Temple Street<br>Los Angeles, CA 90012 |

SCREENING SERVICES GROUP, LLC, Debtor and Debtor-in-Possession herein (hereinafter referred to as "Debtor"), hereby makes this emergency motion seeking an order authorizing use of cash collateral (the "Motion").

## Table of Contents


Page No.

MEMORANDUM OF POINTS AND AUTHORITIES .......... 1

I. FACTUAL BACKGROUND .......... 1
- A. Debtor's Business and Events Leading to the Filing of the Bankruptcy .......... 1
- B. Debtor's Assets .......... 2
- C. Debtor's Creditors .......... 2
  - 1. The Secured Creditors .......... 2
    - a. Creditors with Blanket Liens .......... 3
    - b. Creditors with Liens on Equipment .......... 3
    - c. Cash Collateral for which Debtor Seeks Authority to Use .......... 4
  - 2. Unsecured Creditors .......... 4
- D. Debtor's Plan for the Bankruptcy Case .......... 4
- E. Motion is Brought on an Emergency Basis .......... 4

II. AUTHORITY TO USE CASH COLLATERAL .......... 4
- A. Jurisdiction and Venue .......... 4
- B. Summary of Requested Relief .......... 5
- C. The Terms of the Use of Cash Collateral .......... 5
- D. This Court Should Authorize the Debtor's Immediate use of Cash Collateral, to Promote Reorganization and Protect Creditors .......... 8
- E. Further Adequate Protection is Not Needed .......... 9

III. CONCLUSION .......... 11

DECLARATION OF MICHAEL HALL .......... 12


HABERBUSH, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802



F:\H.A\Clients\ACTIVE\Screening Services - 1863\Bankruptcy\Pleadings\Cash Collateral\CASH COLLATERAL MTN 9.15.2026.wpd

THIS DOCUMENT PREPARED ON RECYCLED PAPER

## Table of Authorities

**Cases** **Page No.**

*Albion Prod. Credit Ass'n v. Langley* (*In re Langley*), 30 B.R. 595 (Bankr. N.D. Ind. 1983)...... 10

*Crocker Nat'l Bank v. Am. Mariner Indus., Inc.* (*In re American Mariner Industries, Inc.*), 734 F.2d 426 (9th Cir. 1984)........ 9

*In re Karl A. Nelse, Inc.*, 16 B.R. 600 (Bankr. S.D. Fla. 1981)........ 9

*In re Pine Lake Village Apartment Co.*, 19 B.R. 819 (Bank. S.D.N.Y. 1982)........ 9

*In re Trujillo*, 485 B.R. 238 (Bankr. D. Colo. 2012)........ 10

*United Savings Assn. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 108 S. Ct. 626, 98 L. Ed. 2d 740 (1988)........ 9

**Rules**

Federal Rule of Bankruptcy Procedure 4001........ 4, 6, 7

**Statutes**

11 U.S.C. § 361........ 5, 8

11 U.S.C. § 362........ 8, 9

11 U.S.C. § 363........ 4, 5, 8

11 U.S.C. § 1107........ 1

11 U.S.C. § 1108........ 1

28 U.S.C. § 157........ 4

28 U.S.C. § 1334........ 4

28 U.S.C. § 1408........ 5

28 U.S.C. § 1409........ 5

HABERBUSH, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

## MEMORANDUM OF POINTS AND AUTHORITIES

By the Motion, Debtor is seeking an order from this Court authorizing Debtor's interim use of cash collateral on the terms set forth herein on an emergency basis.

## I. FACTUAL BACKGROUND

On September 14, 2026, Debtor filed a voluntary petition for relief under the Bankruptcy Code (the "Petition Date"). Pursuant to Sections 1107 and 1108 of the Bankruptcy Code, Debtor retains possession of its assets and is authorized to continue the operation and management of its business. *See* Declaration of Michael Hall at ¶ 3.

### A. Debtor's Business and Events Leading to the Filing of the Bankruptcy

Debtor is a California limited liability company, formed in 2002. Debtor's sole member, manager, and officer is Michael Hall. Debtor is a company that owns an operates screening rooms and private movie theaters for rent. In addition to operating its own theaters, Debtor provides equipment, including projectors, sound systems, and screens for screenings at outside locations. Debtor has twenty-nine (29) employees who assist Debtor with its operations. Declaration of Michael Hall at ¶ 4.

Debtor's first theater is located at 8554-8556 Wilshire Blvd., Beverly Hills, CA 90211 (the "Fine Arts Theatre"). It is a true theater. Debtor's second theater is located at 1640 S. Sepulveda Blvd. Suite 104, Los Angeles, CA 90025 (the "Sepulveda Screening Room"), which is a theater operated out of an office building. Debtor's third theater is located at 150 S. Rodeo Drive Suite 140, Beverly Hills, CA 90212 (the "Rodeo Screening Room"), which is also a theater operated out of an office building. Finally, Debtor leases an office space for its principal place of business and from which it conducts its day-to-day operations. This office space is located at 8670 Wilshire Blvd. Suite 112, Beverly Hills, CA 90211 (the "Wilshire Location"). The Wilshire Location operates two screening rooms, "Wilshire Screening Room" and "QC Room at 8670 Wilshire," as well as Debtor's office location. Declaration of Michael Hall at ¶ 5.

In or about 2020, Debtor's business declined due to COVID-19 restrictions on indoor gatherings. Debtor obtained several COVID-19 relief loans, including a COVID-19 relief loan from the Small Business Administration (the "SBA"). At that time, the debt exceeded revenue growth. As the Debtor's business recovered from COVID-19 fallout and revenue increased, Debtor needed additional capital to

HABERBUSH, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

HABERBUSH, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

assist with loan repayments and spreading out its costs over a period of time. However, Debtor was unable to obtain conventional financing and resorted to short-term loans with unfavorable terms. Declaration of Michael Hall at ¶ 6.

More recently, due to the circumstances described above, Debtor attempted to refinance its equipment loans. However, Debtor's landlords also notified Debtor that they intended to begin eviction proceedings. Because Debtor believes its business is profitable and sales are increased by 5% this year and 10% last year, Debtor filed the Bankruptcy to obtain breathing room and make efforts to renegotiate its leases for the Fine Arts Theatre, the Sepulveda Screening Room, the Rodeo Screening Room and/or the Wilshire Location, which will allow Debtor to reorganize and continue operating its theaters for the benefit of Debtor's creditors and employees. Declaration of Michael Hall at ¶ 7.

**B. <u>Debtor's Assets</u>**

Debtor does not own any real property. Debtor's assets primarily include office equipment and screening equipment, including projectors, sound systems, speakers, computers, equipment racks, cinema seating, generators. The value of these assets as of the Petition Date is approximately $200,000. In addition, Debtor owns two vehicles - one Mitsubishi Fuso and one Ford Transit Van. The value of these vehicles as of the Petition Date is approximately $37,500. Debtor also has accounts receivable in the amount of approximately $126,240 as of the Petition Date. Finally, Debtor has cash on hand as of the Petition Date in the amount of approximately $86,471.66. Accordingly, as of the Petition Date, the total value of Debtor's assets is approximately $450,211.66. *See* Declaration of Michael Hall at ¶ 8.

**C. <u>Debtor's Creditors</u>**

**1. The Secured Creditors**

Debtor has approximately nineteen (19) secured creditors. These creditors have UCC-1 liens secured on Debtor's assets. These creditors, along with a description of the collateral securing the claims, the amounts of the claims, and other details regarding the claims, are set forth in Exhibit "3," which attached to the Declaration of Michael Hall. The claims are also listed in more detail below. *See* Declaration of Michael Hall at ¶ 9.

///

///

a. Creditors with Blanket Liens

Of Debtor's secured creditors, nine (9) have liens on all of Debtor's assets, giving rise to the need for this Motion. Set forth below is a list of the secured creditors holding a blanket lien on all of Debtor's assets in order of their priority with the estimated amount due to each creditor as of the Petition date (the "Secured Lenders"):

| | | |
|---|---|---|
| 1. | The U.S. Small Business Administration (the "SBA") | $500,000 |
| 2. | C T Corporation, as Representative | Unknown[1] |
| 3. | Leaf Capital Funding, LLC ("Leaf Capital") | $84,827.06 |
| 4. | NewTek Small Business Finance, LLC ("NewTek") | $454,480.87 |
| 5. | Ascentium Capital ("Ascentium") | Unknown[2] |
| 6. | Leaf Capital | $39,344.58 |
| 7. | Ascentium | $162,323.44 |
| 8. | On Deck | $109,168.17 |
| 9. | Vida Equity Group, LLC ("Vida Equity") | $10,942.50 |

*See* Declaration of Michael Hall at ¶ 10.

The Secured Lenders all have a lien on Debtor's cash and accounts receivable such that they have an interest in the Cash Collateral. *See* Declaration of Michael Hall at ¶ 10.

b. Creditors with Liens on Equipment

Debtor also has several secured creditors with liens secured on specific equipment. More specifically, as shown by Exhibit "3," Debtor has eleven creditors that have filed UCC Financing Statements with the Secretary of State for the State of California asserting liens on specific equipment financed by Debtor. These creditors do not have a lien on any of Debtor's intangible property and/or future rights to payment. Consequently, these creditors have no interests in the Cash Collateral. *See*

[1] The UCC-1 Financing Statement filed for this creditor only lists CT Corporation, as Representative. Debtor has been unable to determine what creditor this might be from its books and records. Accordingly, this creditor's name and the amount due is currently unknown. *See* Declaration of Michael Hall at ¶ 10.

[2] The principal amount of this loan was $165,000. Debtor is in the process of determining the amount due as of the Petition Date. *See* Declaration of Michael Hall at ¶ 10.

HABERBUSH, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

Declaration of Michael Hall at ¶ 11.

c. Cash Collateral for which Debtor Seeks Authority to Use

As stated above, the Secured Lenders have liens secured by all of Debtor's personal property. The only Cash Collateral now in Debtor's estate is its cash and accounts receivable, in which the Secured Lenders have a security interest. Declaration of Michael Hall at ¶¶ 9-11.

**2. Unsecured Creditors**

Debtor's unsecured claims total approximately $1,692,023.42. *See* Declaration of Michael Hall at ¶ 12.

**D. Debtor's Plan for the Bankruptcy Case**

Debtor's primary goal in this bankruptcy proceeding is to prepare a plan of organization that pays Debtor's creditors, including the Secured Lenders, over time. While Debtor is working on projections to support a plan of reorganization, Debtor seeks to continue its operations, preserve the jobs of its employees, and generate revenue for the benefit of all creditors. *See* Declaration of Michael Hall at ¶ 13.

**E. Motion is Brought on an Emergency Basis**

This Motion is brought on an emergency basis because Debtor has an immediate need to use Cash Collateral. Without the authorization to use the Cash Collateral, Debtor has no funds by which it can operate. All of Debtor's funds on hand are subject to the liens of the Secured Lenders. Unless and until Debtor has authority to use these funds, Debtor will not be able to operate or pay its necessary expenses in order to continue its operations. Without the immediate use of the Cash Collateral, Debtor will have no option but to terminate its operations, to the detriment of all of its creditors and the estate. Declaration of Michael Hall at ¶ 14.

## II. AUTHORITY TO USE CASH COLLATERAL

**A. Jurisdiction and Venue**

This Court has jurisdiction over the case at bar pursuant to 28 U.S.C. §§ 157 and 1334. This matter is considered a core proceeding, pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (M). The statutory basis for the relief sought herein arises from 11 U.S.C. §§ 363(c)(2), as well as Federal Rule of Bankruptcy Procedure 4001(b). Venue of Debtor's Chapter 11 proceedings in the Central District of

HABERBUSH, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

California is proper, pursuant to 28 U.S.C. §§ 1408 and 1409.

**B. Summary of Requested Relief**

By this Motion, the Debtor respectfully seeks the immediate issuances and entry of an order for interim authority to, among other things, (i) pursuant to 11 U.S.C. § 363, use, subject to certain terms and conditions, use Cash Collateral within the meaning of Section 363(a) of the Bankruptcy Code in which the Secured Lenders have a perfected security interest, and (ii) provide adequate protection to the Secured Lenders under Sections 361 and 363 of the Bankruptcy Code on account of such use. Debtor seeks leave of Court for use of Cash Collateral for a period until approximately October 1, 2026. Debtor anticipates and requests that the Court setting a continued hearing on this Motion for continued use of Cash Collateral to be heard approximately on or before October 1, 2026.

Payments of the reasonable, necessary and ordinary monthly expenses must be made out of the accounts receivable and cash on hand in order to increase the value of the estate and the Secured Lenders by allowing Debtor to continue its operations and continue to protect the viability of the business. Therefore, the use of Cash Collateral is necessary for Debtor to continue its operations. *See* Declaration of Michael Hall at ¶ 15.

All funds and accounts receivable collected in the operation of Debtor's business that exist on the Petition Date constitute Cash Collateral as defined by 11 U.S.C. 363 (the "Cash Collateral").

Debtor has a need for the use of Cash Collateral to avoid immediate and irreparable harm to the bankruptcy estate. If such Cash Collateral is not immediately made available to Debtor, it cannot operate its business and it will cause an immediate diminution in the value of property of the bankruptcy estate. Because the continued viability of Debtor's business is in the best interests of all creditors, including the Secured Lenders, Debtor requests that the Court authorize the use of the Cash Collateral for the payment of expenses incurred in the ordinary course of operating Debtor's business. *See* Declaration of Michael Hall at ¶ 16.

**C. The Terms of the Use of Cash Collateral**

Debtor has provided mandatory Local Bankruptcy Rule Form 4001-2 as required by the Local Rules. Further, attached as Exhibit "1" to this Motion, Debtor has provided a copy of the proposed Order in relation to this Motion (the "Order"). In addition, consistent with Federal Bankruptcy Rule

HABERBUSH, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

HABERBUSH, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

4001(b)(1)(B), Debtor hereby details the following relevant information:

Bankruptcy Rule 4001(b)(1)(B)(i): The name of each entity with an interest in the cash collateral:

There are nine creditors with an interest in the Cash Collateral. The Secured Lenders are only creditors with perfected security interests in the Cash Collateral by virtue of the blanket UCC-1 Financing Statements. The background facts of the Secured Lenders' interests in the Cash Collateral is described in the Order at page 2, lines 8-12 and above.

Bankruptcy Rule 4001(b)(1)(B)(ii): The purposes for the use of the cash collateral:

The purposes for the use of the Cash Collateral is to pay Debtor's necessary expenses related to Debtor's continued operations. Debtor's proposed budget (the "Budget") is attached to the Declaration of Michael Hall as Exhibit "2." *See* Declaration of Michael Hall at ¶ 17. Debtor's need for the Cash Collateral is also described in the Order at page 2, lines 1-7.

Bankruptcy Rule 4001(b)(1)(B)(iii): The material terms, including duration, of the use of the cash collateral:

The material terms of the use of the Cash Collateral are as follows: Debtor is authorized to immediately use the Cash Collateral in order to continue its business operations in accordance with the Budget set forth in Exhibit "2" to the Declaration of Michael Hall, and Debtor will not to exceed the amounts set forth in the Budget by more than ten percent both (i) on a line-item basis for each expense category and (ii) in the aggregate. Debtor notes that the Budget includes payroll to insiders, but insiders will not receive compensation unless and until such compensation is approved.[3] *See* Declaration of Michael Hall at ¶ 17.

The authorization to use Cash Collateral shall commence as upon entry of the Order approving this Motion and terminating on or approximately October 1, 2026. A hearing on Debtor's request for an order authorizing Debtor's further use of the Cash Collateral shall be held on or before approximately October 1, 2026 before the Court.

The full terms for use of the Cash Collateral are described in the Order at page 2, lines 1-12.

---

[3] Debtor also notes that it is not filing a motion for approval to pay prepetition payroll because it paid all outstanding payroll current as of the Petition Date. *See* Declaration of Michael Hall at ¶ 17.

<u>Bankruptcy Rule 4001(b)(1)(B)(iv): Any liens, cash payments, or other adequate protection that will be provided to each entity with an interest in the cash collateral or, if no additional adequate protection is proposed, an explanation of why each entity's interest is adequately protected:</u>

As adequate protection for the Secured Lenders, Debtor proposes a post-petition replacement lien on all of Debtor's post-petition personal property, other than recoveries from avoiding power actions, which liens shall have the same validity, priority, and extent as the prepetition lien, subject to Debtor's ability to use such collateral upon request and order of this Court. *See* Declaration of Michael Hall at ¶ 18.

While Debtor asserts that the value of the property securing the Secured Lenders' claims is not diminishing in value, to the extent that any of the Secured Lenders' asserts that their claim is not adequately protected from the diminution in value of its security interest, Debtor offers a replacement security interest in its post-petition acquired property to the extent of any diminution in value to the estate, which would be determined at a later time if and when such determination is appropriate. Further, based on the Budget, Debtor expects that the value of the Secured Lenders' replacement liens will increase due to Debtor's successful operations. *See* Declaration of Michael Hall at ¶ 18. Therefore, the Secured Lenders are adequately protected.

Debtor believes that the replacement lien is sufficient to adequately protect all Secured Lenders such that no additional adequate protection is required. To the extent the Court believes payments must be made to some or all of the Secured Lenders to adequately protect them, Debtor would request such payments be limited only to what is required to adequately protect them. Because the value of Debtor's assets are less than the total amount of the first position Secured Creditor, the SBA, Debtor believes that only the SBA would possibly need further protection from the possible diminution in value of the collateral in addition to the replacement lien already offered. *See* Declaration of Michael Hall at ¶ 18.

The adequate protection to be provided to these creditors is described in the Order at page 2, lines 7-20 and above.

///

///

HABERBUSH, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

**D. This Court Should Authorize the Debtor's Immediate use of Cash Collateral, to Promote Reorganization and Protect Creditors.**

11 U.S.C. § 363 provides, in pertinent part:

(c) (1) If the business of the debtor is authorized to be operated under section 721, 1108, 1183, 1184, 1203, 1204, or 1304 of this title and unless the court orders otherwise, the trustee [or debtor-in-possession] may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

(2) The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless–

(A) each entity that has an interest in such cash collateral consents; or

(B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

11 U.S.C. § 363(c)(1) and (2).

Section 363(e) of the Bankruptcy Code provides that "on request of an entity that has an interest in property used, . . . the court, with or without a hearing, shall prohibit or condition such use . . . as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e).

11 U.S.C. § 361 indicates:

When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by–

(1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;

(2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or

(3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

Further, 11 U.S.C. § 362 provides additional guidance for what constitutes adequate protection.

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay–

HABERBUSH, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

(2) with respect to a stay of an act against property under subsection (a) of this section, if–

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization; . . .

11 U.S.C. § 362(d)(1) and (2).

Bankruptcy courts have often allowed debtors to use cash collateral to successfully restructure and reorganize their businesses. *In re Pine Lake Village Apartment Co.*, 19 B.R. 819 (Bank. S.D.N.Y. 1982) (debtor permitted to use cash collateral from rental income to enhance value of real property and secured creditor's claim); *In re Karl A. Nelse, Inc.*, 16 B.R. 600, 602 (Bankr. S.D. Fla. 1981) (marginally secured creditor adequately protected by lien on post-petition property acquired by debtor; debtors can use cash collateral "in the normal operation of their business").

Here, it is unquestionable that the Cash Collateral is necessary for Debtor's reorganization. If Debtor is not authorized to use the Cash Collateral for its operations, as set forth in the Budget, Debtor will not be able to operate and it will be forced to liquidate, thereby hurting all creditors, including the Secured Lenders, especially considering the relatively low value of Debtor's assets. Moreover, as shown by the Budget, Debtor anticipates that its net income will be positive, thereby generating a benefit to the estate if Debtor is permitted to use the Cash Collateral. While Debtor is able to generate sufficient income to provide for its monthly expenses, because it will take time for Debtor to generate the capital necessary to pay these ongoing expenses, it is crucial that Debtor have immediate authority to use the Cash Collateral. Declaration of Michael Hall at ¶ 19. Therefore, allowing Debtor the authority to use the Cash Collateral aids creditors in their bid to recover on their investment.

**E. <u>Further Adequate Protection is Not Needed</u>**

"Adequate protection" is a flexible concept that should be adapted to the circumstances of the case. *See*, *Crocker Nat'l Bank v. Am. Mariner Indus., Inc.* (*In re American Mariner Industries, Inc.*), 734 F.2d 426, 430-432 (9th Cir. 1984) (*superseded on unrelated issues in United Savings Assn. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 108 S. Ct. 626, 98 L. Ed. 2d 740 (1988)

HABERBUSH, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

("*Timbers*")). Equitable considerations play a significant role in this analysis. *See, Albion Prod. Credit Ass'n v. Langley* (*In re Langley*), 30 B.R. 595, 605 (Bankr. N.D. Ind. 1983). However, courts have indicated that creditors with liens that are avoidable are not entitled to adequate protection. *See, e.g., In re Trujillo*, 485 B.R. 238, 251 (Bankr. D. Colo. 2012) (explaining the availability of adequate protection).

Here, there are several facts which show that the Secured Lenders' secured collateral will be adequately protected: 1) the Cash Collateral is necessary for Debtor's operations, which are operating at a net profit, which shows that allowing Debtor to continue to operate will ultimately result in more assets available for all creditors; 2) the Cash Collateral is essential to allow Debtor to operate as a going concern and reorganize; 3) Debtor has every incentive to maximize its profits and ensure that the Cash Collateral is protected; and 4) Debtor will segregate all Cash Collateral in a separate account pending further Court order. By offering the Secured Lenders a replacement lien, it is evident that this is adequate protection of Secured Lenders' claims and further adequate protection is not required.

Nevertheless, Debtor is willing to provide additional adequate protection in the form of monthly payments to Secured Lenders to the extent necessary. To the extent the Court believes payments must be made to some or all of the Secured Lenders to adequately protect them, Debtor would request such payments be limited only to what is required to adequately protect them. Because the value of Debtor's assets are less than the total amount of the first position Secured Creditor, the SBA, Debtor believes that only the SBA would possibly need further protection from the possible diminution in value of the collateral in addition to the replacement lien already offered. Consequently, Debtor does not believe that monthly payments to the Secured Lenders are required given the protection of the Secured Lenders through the replacement lien to the extent their collateral diminishes in value. Further, as indicated above, Debtor will offer a post-petition replacement lien on all of Debtor's post-petition personal property, other than recoveries from avoiding power actions, which liens shall have the same validity, priority, and extent as the prepetition lien, in further adequate protection of the Secured Lenders' interests, subject to Debtor's ability to use such collateral upon request and order of this Court. Declaration of Michael Hall at ¶ 20. As discussed above, Debtor does not believe further adequate protection is necessary. Therefore, Debtor respectfully requests that this Court grant this Motion for

HABERBUSH, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

authorization to use Cash Collateral on an emergency basis.

## III. CONCLUSION

In sum, because use of Cash Collateral is essential to Debtor's continued operations and viability, Debtor requests that this Court grant the Motion on an emergency basis and authorize Debtor to use the Cash Collateral on the terms described in the Order, Exhibit "1" to this Motion.

Respectfully submitted,

HABERBUSH, LLP

Date: September 15, 2026

By, [signature]
VANESSA M. HABERBUSH, Proposed Attorneys for Debtor and Debtor-In-Possession

HABERBUSH, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

# DECLARATION OF MICHAEL HALL

I, Michael Hall, hereby declare and state:

1. I am an individual over the age of 18 years and have personal knowledge of the facts stated herein. If I were called as a witness, I would and could competently testify to the following facts, under penalty of perjury.

2. I am the owner, manager, member, and President of Screening Services Group, LLC ("Debtor"). I am actively involved in all of Debtor's operations. I personally participate in and have personal knowledge of all of Debtor's operations, finances, and activities. This declaration is given in support of Debtor's Emergency Motion of Debtor for Order Authorizing Interim Use of Cash Collateral (the "Motion"). This declaration is also given in support of hearing the Motion on an emergency basis. Unless otherwise defined, all defined terms used herein have the same meanings as those set forth in the Motion.

3. On September 14, 2026, Debtor filed a voluntary petition for relief under the Bankruptcy Code. Pursuant to Sections 1107 and 1108 of the Bankruptcy Code, Debtor retains possession of its assets and is authorized to continue the operation and management of its business.

4. Debtor is a California limited liability company, formed in 2002. Debtor's sole member, manager, and officer is myself. Debtor is a company that owns an operates screening rooms and private movie theaters for rent. In addition to operating its own theaters, Debtor provides equipment, including projectors, sound systems, and screens for screenings at outside locations. Debtor has twenty-nine (29) employees who assist Debtor with its operations.

5. Debtor's first theater is located at 8554-8556 Wilshire Blvd., Beverly Hills, CA 90211 (the "Fine Arts Theatre"). It is a true theater. Debtor's second theater is located at 1640 S. Sepulveda Blvd. Suite 104, Los Angeles, CA 90025 (the "Sepulveda Screening Room"), which is a theater operated out of an office building. Debtor's third theater is located at 150 S. Rodeo Drive Suite 140, Beverly Hills, CA 90212 (the "Rodeo Screening Room"), which is also a theater operated out of an office building. Finally, Debtor leases an office space for its principal place of business and from which it conducts its day-to-day operations. This office space is located at 8670 Wilshire Blvd. Suite 112, Beverly Hills, CA 90211 (the "Wilshire Location"). The Wilshire Location operates two screening rooms, "Wilshire

HABERBUSH, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

Screening Room" and "QC Room at 8670 Wilshire," as well as Debtor's office location.

6. In or about 2020, Debtor's business declined due to COVID-19 restrictions on indoor gatherings. Debtor obtained several COVID-19 relief loans, including a COVID-19 relief loan from the Small Business Administration (the "SBA"). At that time, the debt exceeded revenue growth. As the Debtor's business recovered from COVID-19 fallout and revenue increased, Debtor needed additional capital to assist with loan repayments and spreading out its costs over a period of time. However, Debtor was unable to obtain conventional financing and resorted to short-term loans with unfavorable terms.

7. More recently, due to the circumstances described above, Debtor attempted to refinance its equipment loans. However, Debtor's landlords also notified Debtor that they intended to begin eviction proceedings. Because Debtor believes its business is profitable and sales are increased by 5% this year and 10% last year, Debtor filed the Bankruptcy to obtain breathing room and make efforts to renegotiate its leases for the Fine Arts Theater, the Sepulveda Screening Room, the Rodeo Screening Room and/or the Wilshire Location, which will allow Debtor to reorganize and continue operating its theaters for the benefit of Debtor's creditors and employees.

8. Debtor does not own any real property. Debtor's assets primarily include office equipment and screening equipment, including projectors, sound systems, speakers, computers, equipment racks, cinema seating, generators. The value of these assets as of the Petition Date is approximately $200,000. In addition, Debtor owns two vehicles - one Mitsubishi Fuso and one Ford Transit Van. The value of these vehicles as of the Petition Date is approximately $37,500. Debtor also has accounts receivable in the amount of approximately $126,240 as of the Petition Date. Finally, Debtor has cash on hand as of the Petition Date in the amount of approximately $86,471.66. Accordingly, as of the Petition Date, the total value of Debtor's assets is approximately $450,211.66.

9. Debtor has approximately nineteen (19) secured creditors. These creditors have UCC-1 liens secured on Debtor's assets. I have analyzed these creditors and, with the assistance of Debtor's professionals, created a chart of these creditors, along with a description of the collateral securing the claims, the amounts of the claims, and other details regarding the claims, a true and correct copy of which is attached hereto and incorporated herein, by this reference, as Exhibit "3." The claims are also listed in more detail below.

HABERBUSH, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

10. Of Debtor's secured creditors, nine (9) have liens on all of Debtor's assets, giving rise to the need for this Motion. Set forth below is a list of the secured creditors holding a blanket lien on all of Debtor's assets in order of their priority with the estimated amount due to each creditor as of the Petition date (the "Secured Lenders"):

| | | |
|---|---|---|
| 1. | The U.S. Small Business Administration (the "SBA") | $500,000 |
| 2. | C T Corporation, as Representative | Unknown[4] |
| 3. | Leaf Capital Funding, LLC ("Leaf Capital") | $84,827.06 |
| 4. | NewTek Small Business Finance, LLC ("NewTek") | $454,480.87 |
| 5. | Ascentium Capital ("Ascentium") | Unknown[5] |
| 6. | Leaf Capital | $39,344.58 |
| 7. | Ascentium | $162,323.44 |
| 8. | On Deck | $109,168.17 |
| 9. | Vida Equity Group, LLC ("Vida Equity") | $10,942.50 |

The Secured Lenders all have a lien on Debtor's cash and accounts receivable such that they have an interest in the Cash Collateral.

11. Debtor also has several secured creditors with liens secured on specific equipment. More specifically, as shown by Exhibit "3," Debtor has eleven creditors that have filed UCC Financing Statements with the Secretary of State for the State of California asserting liens on specific equipment financed by Debtor. These creditors do not have a lien on any of Debtor's intangible property and/or future rights to payment. Consequently, these creditors have no interests in the Cash Collateral.

12. Debtor's unsecured claims total approximately $1,692,023.42.

13. Debtor's primary goal in this bankruptcy proceeding is to prepare a plan of organization that pays Debtor's creditors, including the Secured Lenders, over time. While Debtor is working on projections to support a plan of reorganization, Debtor seeks to continue its operations, preserve the jobs

---

[4] The UCC-1 Financing Statement filed for this creditor only lists CT Corporation, as Representative. I, on behalf of Debtor, have been unable to determine what creditor this might be from its books and records. Accordingly, this creditor's name and the amount due is currently unknown.

[5] The principal amount of this loan was $165,000. I, on behalf of Debtor, am in the process of determining the amount due as of the Petition Date.

HABERBUSH, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

of its employees, and generate revenue for the benefit of all creditors.

14. This Motion is brought on an emergency basis because Debtor has an immediate need to use Cash Collateral. Without the authorization to use the Cash Collateral, Debtor has no funds by which it can operate. All of Debtor's funds on hand are subject to the liens of the Secured Lenders. Unless and until Debtor has authority to use these funds, Debtor will not be able to operate or pay its necessary expenses in order to continue its operations. Without the immediate use of the Cash Collateral, Debtor will have no option but to terminate its operations, to the detriment of all of its creditors and the estate.

15. Payments of the reasonable, necessary and ordinary monthly expenses must be made out of the accounts receivable and cash on hand in order to increase the value of the estate and the Secured Lenders by allowing Debtor to continue its operations and continue to protect the viability of the business. Therefore, the use of Cash Collateral is necessary for Debtor to continue its operations.

16. Debtor has a need for the use of Cash Collateral to avoid immediate and irreparable harm to the bankruptcy estate. If such Cash Collateral is not immediately made available to Debtor, it cannot operate its business and it will cause an immediate diminution in the value of property of the bankruptcy estate. Because the continued viability of Debtor's business is in the best interests of all creditors, including the Secured Lenders, Debtor requests that the Court authorize the use of the Cash Collateral for the payment of expenses incurred in the ordinary course of operating Debtor's business.

17. The purposes for the use of the Cash Collateral is to pay Debtor's necessary expenses related to Debtor's continued operations. Debtor's proposed budget (the "Budget") for the months of September, 2026, October 2026, November 2026, and December 2026 is attached hereto and incorporated herein, by this reference as Exhibit "2." I prepared the Budget based upon my years of experience in participating in Debtor's operations and finances. These expenses are reasonable and necessary to manage Debtor's business and ensure that Debtor is able to operate. I, on behalf of Debtor, have estimated these budget items based Debtor's prior months' actual income and expenses. I believe the Budget is a reasonable estimate of Debtor's likely income and expenses based on its historical income and expenses. Debtor will not to exceed the amounts set forth in the Budget by more than ten percent both (i) on a line-item basis for each expense category and (ii) in the aggregate. I note that the

HABERBUSH, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

Budget includes payroll to insiders, but insiders will not receive compensation unless and until such compensation is approved. The only insider is myself. Debtor also paid outstanding payroll current as of the Petition Date so it does not need approval to pay prepetition payroll since there are no payroll claims to pay.

18. As adequate protection for the Secured Lenders, Debtor proposes a post-petition replacement lien on all of Debtor's post-petition personal property, other than recoveries from avoiding power actions, which liens shall have the same validity, priority, and extent as the prepetition lien, subject to Debtor's ability to use such collateral upon request and order of this Court. While Debtor asserts that the value of the property securing the Secured Lenders' claims is not diminishing in value, to the extent that any of the Secured Lenders' asserts that their claim is not adequately protected from the diminution in value of its security interest, Debtor offers a replacement security interest in its post-petition acquired property to the extent of any diminution in value to the estate, which would be determined at a later time if and when such determination is appropriate. Further, based on the Budget, I, on behalf of Debtor, expect that the value of the Secured Lenders' replacement liens will increase due to Debtor's successful operations. I, on behalf of Debtor, believe that the replacement lien is sufficient to adequately protect all Secured Lenders such that no additional adequate protection is required. To the extent the Court believes payments must be made to some or all of the Secured Lenders to adequately protect them, Debtor would request such payments be limited only to what is required to adequately protect them. Because the value of Debtor's assets are less than the total amount of the first position Secured Creditor, the SBA, Debtor believes that only the SBA would possibly need further protection from the possible diminution in value of the collateral in addition to the replacement lien already offered.

19. The Cash Collateral is necessary for Debtor's reorganization. If Debtor is not authorized to use the Cash Collateral for its operations, as set forth in the Budget, Debtor will not be able to operate and it will be forced to liquidate, thereby hurting all creditors, including the Secured Lenders, especially considering the relatively low value of Debtor's assets. Moreover, as shown by the Budget, I, on behalf of Debtor, anticipate that Debtor's net income will be positive, thereby generating a benefit to the estate if Debtor is permitted to use the Cash Collateral. While Debtor is able to generate sufficient income to provide for its monthly expenses, because it will take time for Debtor to generate the capital necessary

HABERBUSH, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

to pay these ongoing expenses, it is crucial that Debtor have immediate authority to use the Cash Collateral.

20. Debtor is willing to provide additional adequate protection in the form of monthly payments to Secured Lenders to the extent necessary. To the extent the Court believes payments must be made to some or all of the Secured Lenders to adequately protect them, Debtor would request such payments be limited only to what is required to adequately protect them. Because the value of Debtor's assets are less than the total amount of the first position Secured Creditor, the SBA, I, on behalf of Debtor, believe that only the SBA would possibly need further protection from the possible diminution in value of the collateral in addition to the replacement lien already offered. Consequently, I, on behalf of Debtor, do not believe that monthly payments to the Secured Lenders are required given the protection of the Secured Lenders through the replacement lien to the extent their collateral diminishes in value. Further, as indicated above, Debtor will offer a post-petition replacement lien on all of Debtor's post-petition personal property, other than recoveries from avoiding power actions, which liens shall have the same validity, priority, and extent as the prepetition lien, in further adequate protection of the Secured Lenders' interests, subject to Debtor's ability to use such collateral upon request and order of this Court.

EXECUTED AT Beverly Hills, CALIFORNIA, THIS 15 DAY OF SEPTEMBER, 2026.

I declare under penalty of perjury that the foregoing is true and correct.

Michael S Hall

Michael Hall, Declarant

HABERBUSH, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802



THIS DOCUMENT PREPARED ON RECYCLED PAPER

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
444 West Ocean Boulevard, Suite 1400, Long Beach, CA 90802

A true and correct copy of the foregoing document entitled: **EMERGENCY MOTION OF DEBTOR AND DEBTOR-IN-POSSESSION FOR ORDER AUTHORIZING INTERIM USE OF CASH COLLATERAL; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF MICHAEL HALL IN SUPPORT OF EMERGENCY MOTION AND IN SUPPORT OF HEARING MOTION ON EMERGENCY BASIS** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **September 15, 2026,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Vanessa M Haberbush** vhaberbush@lbinsolvency.com, dhaberbush@lbinsolvency.com,ahaberbush@lbinsolvency.com,abostic@lbinsolvency.com,haberbush.assistant@gmail.com,jborin@lbinsolvency.com,lbogard@lbinsolvency.com
- **United States Trustee (LA)** ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL**:
On _______, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **September 15, 2026**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Barry Russell
United States Bankruptcy Court
255 E. Temple Street
Suite 1660 / Courtroom 1668
Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| September 15, 2026 | Alexander S. Bostic | [signature] |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |